**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SHERON HAYES,  ) 2:04-CV-191-BES-GWF
             )
  Plaintiff, )
             ) **ORDER**
  v.         )
             )
CLARK COUNTY,)
             )
  Defendant. )
_____)

Currently before this Court is Defendant's Motion for Summary Judgment (#42), which was filed on November 14, 2005. Plaintiff filed an Opposition (#47) on January 27, 2006, and Defendant filed a Reply (#49) on March 7, 2006.

**I. Background**

In May 1998, Plaintiff, an African-American female, began her employment with Defendant as a Right of Way Agent. Shortly after Plaintiff was hired, Defendant created the Real Property Management Division, the purpose of which was to consolidate all county property management and development activities. To accomplish this purpose, the division is responsible for the acquisition, design, and development of Clark County property, excluding roads, regional transportation property and airport property. These responsibilities are divided among three operating units within the Real Property Management Division which include the following: (1) Real Estate/Property Acquisition, (2) Architecture and Engineering, and (3) Park Development.

In July, 1998, Plaintiff was promoted to Senior Management Analyst for the Real Estate/Property Acquisition Unit of the Real Property Management Division. She was classified

1

as a schedule 30 employee and her starting annual salary was $45,000. As a Senior Management Analyst, Plaintiff was responsible for locating, purchasing, and managing county property. Plaintiff had a staff of two people to help her carry out these objectives.

In or about January, 1999, the Director of General Services, Earl Hawkes, and the Assistant Director for General Services, Sandy Norskog, concluded that the three supervisors of the three Real Property Management Division operating units should be classified as schedule 33 division level managers. Under this plan, Plaintiff's position would have been reclassified from a schedule 30 to a schedule 33 and the manager position for the Park Development Unit, held by Mickey Carter, would have been reclassified from a schedule 32 to a schedule 33. The manager from the remaining unit, Architecture and Engineering, already had a job classification of schedule 33; accordingly, no reclassification for that position was necessary. Hawkes informed Plaintiff that he intended to request a reclassification of her position to schedule 33.

Norskog submitted requests to the Human Resources Department to conduct desk audits for Plaintiff, Carter, and three other individuals who were in the Architecture and Engineering and Park Development units. Betty Burke, a Senior Human Resources Analyst, conducted these audits. In her audit, Burke determined that Plaintiff's position had a JEMS score of 669, which equated to a schedule 32 classification.[1] Based on this finding, Burke recommended three alternative courses of action that Defendant could take with respect to Plaintiff's position. Alternative one suggested that Defendant establish a new position titled Administrator, Real Estate/Property Acquisition with a schedule 32 classification. Alternative two suggested that Defendant upgrade Plaintiff's position to a schedule 32 division manager level, and later re-examine the position for a possible schedule change to schedule 33. Alternative three suggested that the county remove some of Plaintiff's responsibilities while continuing to classify her position as a schedule 30.

Burke submitted her suggestions to Beverly Glode, the Director of Human Resources.

---

[1] A JEMS score is a standard points structure used to determine the pay schedules for county positions based on the duties, responsibilities, and functions that the positions entail.

2

Burke and Glode then discussed these reviews with Michael Alastuey, the Assistant County Manager, during a meeting in his office. This meeting concluded with Alastuey instructing Burke to redraft Plaintiff's desk audit based on new information regarding whether the Real Property Management Division would become a full department.

In her revised audit, Burke no longer listed the JEMS score for Plainitff's position. Further, one of Burke's recommendations changed. Unlike the first audit that suggested that Defendant give Plaintiff the title of Administrator and reclassify her position as a schedule 32, the revised audit suggested that Defendant give Plaintiff the title of Administrator but reclassify her position to a schedule 31. Alastuey accepted this revised recommendation, and Plaintiff was promoted to a schedule 31 employee.

On October 27, 1999, after learning that she was only promoted to schedule 31, Plaintiff filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendant on the grounds of sex, race, and retaliation. On or about April 14, 2000, Plaintiff amended this charge of discrimination to include a claim of hostile work environment. Finally, on February 19, 2004, Plaintiff filed the Complaint (#1) in this action, alleging discrimination and retaliation in violation of Title VII.

**II. Analysis**

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is "not warranted if a material issue of fact exists for trial." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 661–62 (9th Cir. 1997). A material fact is one that "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). Further, any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of proving the absence of a genuine issue of material fact lies with the moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party." Id. (citing Liberty Lobby, 477 U.S. at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless, if the moving party presents evidence that would call for judgment as a matter of law, then the opposing party must show by specific facts the existence of a genuine issue for trial. Liberty Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e).  To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. "If the evidence [proffered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50.

In her Complaint (#1), Plaintiff claims that Defendant engaged in disparate treatment of her on the basis of her sex and race, African-American, in violation of Title VII. Further, Plaintiff claims that Defendant subjected her to retaliation for complaining about discrimination in violation of Title VII.[2]

To survive summary judgment on her Title VII claims, Plaintiff "must offer evidence that 'gives rise to an inference of unlawful discrimination,' either through the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) or with direct or circumstantial evidence of discriminatory intent." Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). In her Opposition (#47), Plaintiff attempts to give rise to such an inference by employing the McDonnell Douglas framework.

---

[2] Plaintiff's amended charge with the EEOC contained a hostile work environment claim against Defendant. This claim, however, is not contained in Plaintiff's Complaint (#1). Further, Plaintiff has neither offered evidence in support of such a claim nor has she opposed Defendant's Motion for Summary Judgment (#42) on this claim. Accordingly, any claim for hostile work environment is dismissed.

Under McDonnell Douglas, Plaintiff has the burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 804. If Plaintiff establishes a prima facie case, then Defendant must offer a legitimate nondiscriminatory reason for the adverse employment action. Id. Plaintiff then has the burden of showing that Defendant's reason is pretextual. Id. Applying this framework, the Court now determines whether Plaintiff's claims survive Defendant's Motion for Summary Judgment (#42).[3]

**A. Disparate Treatment**

The failure to promote claim in this case is predicated on Defendant's failure to reclassify Plaintiff's position to a schedule 32. Unlike traditional failure to promote cases, there was no competitive promotion process in this case.[4] The Court must therefore determine whether Plaintiff has established a prima facie case of disparate treatment because she did not receive a non-competitive promotion.

To establish a prima facie case of disparate treatment for failure to receive a non-competitive promotion, Plaintiff must show the following: (1) she belongs to a protected class; (2) she applied for and was qualified for the up-grade; (3) she was rejected despite her qualifications; and (4) similarly situated individuals not in Plaintiff's protected class received non-competitive promotions. Harris v. Secretary, United States Dep't of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997); Epstein v. Secretary, United States Dep't of Treasury, 739 F.2d

---

[3] Plaintiff also makes a blanket challenge to the admissibility of Defendant's exhibits. After reviewing the exhibits, however, the Court finds that they have been authenticated in accordance with Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) and are otherwise admissible at this stage in the proceedings.

[4] Generally, failure to promote cases involve a competitive promotion process in which two or more employees have applied for an open position. In such traditional failure to promote cases, a plaintiff must show the following to establish a prima facie case of disparate treatment: (1) she belongs to a protected class; (2) she applied for and was qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing McDonnell Douglas, 411 U.S. at 802). Because of the inherent differences between competitive and non-competitive promotion processes, this standard cannot be applied in cases where a plaintiff is claiming disparate treatment based on her failure to receive a non-competitive promotion, such as a position reclassification or upgrade.

274, 278 (7th Cir. 1984).[5] Plaintiff must offer only minimal proof in support of each prong to establish a prima facie case, and such proof "does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

The Court finds that Plaintiff has failed to show that similarly situated individuals not in her protected class received non-competitive promotions. Four other positions in Plaintiff's division were undergoing reclassification reviews at the same time as Plaintiff. The first position belonged to Mickey Carter who was a supervisor of one of the other operating units in Plaintiff's division. Carter was the most similarly situated employee to Plaintiff. Carter, however, did not receive a promotion, remaining a schedule 32 employee after the reclassification review. The next position considered for reclassification was to upgrade one of four architect positions to a senior position. Ultimately, Defendant reclassified one of the positions to a schedule 31, but conducted a competitive departmental recruitment to fill the position. Because this promotion was competitive, it is not similar to Plaintiff's non-competitive reclassification. The final two positions considered for reclassification in Plaintiff's division were senior architect positions in the Park Development operating unit. These positions were originally classified as schedule 31 positions; however, after the reclassification review, Defendant determined that these positions should be downgraded to schedule 30. Thus, Plaintiff was the only employee in her division who received a non-competitive promotion as a result of the reclassification reviews.[6]

Because Plaintiff has failed to show that similarly situated individuals not in her protected class received non-competitive promotions, she has failed to establish a prima facie

---

[5] In her Opposition (#47), Plaintiff cited the traditional disparate treatment standard under McDonnell Douglas. The Supreme Court, however, has cautioned that "the prima facie case method established in McDonnell Douglas was 'never intended to be rigid, mechanized, or ritualistic.'" U.S. Postal Serv. Bd. Of Governors v. Aikens, 460 U.S. 711, 715 (1983) (quoting Furnco Constr. Corp. V. Waters, 438 U.S. 567, 577 (1978)). Accordingly, the Court applies the modified disparate treatment standard to determine whether Plaintiff has established a prima facie case of failure to receive a non-competitive promotion.

[6] Plaintiff also argues that she had similar responsibilities to three other individuals, Betty Burke, Brenda Pappas, and Ken Chambers, who were reclassified to schedule 32 employees. These employees were not in Plaintiff's department, and all three of them obtained their promotions through a competitive process, not a desk audit like Plaintiff. Thus, Plaintiff's comparison to these individuals does not show that similarly situated individuals not in her protected class received non-competitive promotions. See Harris, 119 F.3d at 1320.

case of discrimination.

Further, even if Plaintiff could establish a prima facie case of discrimination, the Court finds that her disparate treatment claim still fails. Defendant provided a non-discriminatory reason to explain why Plaintiff was promoted to a schedule 31 employee instead of a schedule 32 or 33 employee. As Burke testified at her deposition, the initial recommendation to promote Plaintiff to a schedule 32 employee was based on the faulty assumption that Plaintiff's unit would eventually become a division. (Reply (#49) Ex. 1 at 30–32). Plaintiff's unit, however, was to remain a unit, and, according to Alastuey, it would be highly unusual to give Plaintiff a division manager classification even though she was merely a supervisor in a division subunit.[7] (Motion (#42) Ex. 2 at 21–24). Burke redrafted her reclassification review accordingly, recommending that Plaintiff be promoted to a schedule 31. Defendant ultimately accepted Burke's recommendation. Plaintiff has submitted no evidence to show that this explanation is pretextual.

Accordingly, Defendant's Motion for Summary Judgment (#42) on Plaintiff's disparate treatment claim is granted.

**B. Retaliation**

To establish a prima facie case of retaliation, Plaintiff must show the following: (1) she engaged in statutorily protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between her protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir, 2000). Like the disparate treatment analysis, if a plaintiff asserts a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. Id. If the defendant is able to articulate such a reason, then the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual. Id.

Plaintiff alleges that after she filed a charge of discrimination with the EEOC, Defendant retaliated against her in numerous ways. Specifically, Plaintiff alleges the following in support

---

[7] At his deposition, Alastuey also noted that schedule 32 was high for the unit supervisor position and that one of the reasons that Carter retained such a classification was because he was a schedule 32 employee before he became the supervisor of the Park Development unit. See (Motion (#42) Ex. 2 at 21–27).

1  of her claim for retaliation: (1) her supervisor, Sandy Norskog, wrote her up and suspended
2  her; (2) Norskog recruited her subordinates to work against her; (3) as witnessed by Janet
3  Clark, Norskog talked down to Plaintiff, made decisions without involving Plaintiff, and did not
4  treat her with respect; (4) Stephanie Denton, one of Plaintiff's subordinates, was terminated
5  without Plaintiff's knowledge; and (5) when Defendant's affirmative action officer, George
6  Cotton, attempted to investigate Plaintiff's complaint, he was removed from her case. In
7  response, Defendant argues that the first four allegations are either time-barred or not
8  supported by evidence and that Plaintiff did not suffer an adverse employment action when
9  Cotton was removed from her discrimination case.

10  42 U.S.C. § 2000e-5(e)(1) specifies with precision the prerequisites that a plaintiff must
11  satisfy before filing suit. Under that statute, a charge shall be filed within 180 or 300 days after
12  the alleged unlawful employment practice occurred. Amtrak v. Morgan, 536 U.S. 101, 109–10
13  (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). The Supreme Court has further elucidated these
14  requirements. In Morgan, the Court recognized the distinction between discrete discriminatory
15  and retaliatory acts and hostile work environment claims.[8] Discrete acts "are not actionable if
16  time barred, even when they are related to acts alleged in timely filed charges." Id. at 113.
17  Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that
18  act." Id. Thus, charges relating to discrete discriminatory acts must be filed within 180 or 300
19  days after the act occurred. Id.

20  The evidence shows that Plaintiff's last charge of discrimination and retaliation was filed
21  with the EEOC on April 14, 2000. See (Complaint (#1) Ex. 1). Thus, to be actionable,
22  Defendant's alleged retaliatory acts must have occurred within 300 days prior to April 14,
23  2000. Any acts that occurred after April 14, 2000 are not actionable because Plaintiff failed to
24  file a charges with the EEOC pursuant to 42 U.S.C. § 2000e-5(e)(1).

25  Plaintiff's first four allegations of retaliation fail because they are either unsupported by

---

[8] Plaintiff failed to assert a hostile work environment claim in her Complaint (#1) and further failed to oppose Defendant's Motion for Summary Judgment (#42) on any potential hostile work environment claims. See supra at note 2. Accordingly, the Court treats Plaintiff's allegations in support of her retaliation claim as discrete acts, not as allegations of a hostile work environment. Morgan, 536 U.S. at 115 (discussing the distinction between hostile work environment claims and discrete act claims).

evidence or fail to meet the requirements of 42 U.S.C. § 2000e-5(e)(1). In her Opposition (#47), Plaintiff cites no evidence to show when she was written up or suspended by Norskog. (Opposition (#47) at 7); see also Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 775 (9th Cir. 2001) (stating that "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."). Similarly, Plaintiff cites no evidence to show that Norskog encouraged her subordinates to work against her. Id. Defendant, however, provides evidence showing that Plaintiff did not receive a written reprimand until July 11, 2001, and that Plaintiff was not suspended until September 17, 2002. (Reply (#49) Ex. 9 at 5, 9). Plaintiff failed to file a charge of discrimination regarding these alleged retaliatory acts. Further, these acts occurred over one year after Plaintiff filed her initial charge with the EEOC, and Plaintiff has failed to submit any evidence of a causal link between Norskog's actions and the filing of the discrimination charge. Norskog's alleged actions therefore do not establish an actionable retaliation claim.

Next, Plaintiff relies on the observations of Janet Clark to show that Norskog retaliated against her. A review of her declaration, however, shows that Clark was not hired until December, 2001, well after Plaintiff filed her last charge of discrimination with the EEOC. (Opposition (#47) Ex. 7). Further, Plaintiff offers no evidence of a causal link between her filing a charge of discrimination on April 14, 2000 and Clark's observations of actions taken after December 2001. Thus, Clark's observations do not establish an actionable retaliation claim.

Plaintiff's fourth allegation in support of her retaliation claim is that her subordinate, Stephanie Denton, was fired without her knowledge. Denton was terminated on July 12, 2001—over one year after Plaintiff filed her last charge of discrimination with the EEOC. Further, Plaintiff offers no evidence to show that Denton's termination was in any way related to her filing a charge of discrimination on April 14, 2000. Thus, Denton's termination does not create an actionable retaliation claim.

Finally, Plaintiff notes that Defendant removed George Cotton from her discrimination case and that the case was transferred to the District Attorney's Office. The Court cannot find

that this action constitutes an adverse employment action. Transferring a discrimination complaint from one competent individual to another competent individual is not reasonable likely to deter employees from engaging in protected activity. Ray, 217 F.3d at 1243. Further, the transfer in no way affected Plaintiff's compensation, benefits, or job duties. Id. at 1244. Accordingly, because the transfer of Plaintiff's discrimination complaint does not constitute an adverse employment action, Plaintiff has failed to establish a prima facie case of retaliation.[9]

Even if Plaintiff could establish a prima facie case of retaliation based on Cotton's removal from her case, Defendant provides a nondiscriminatory reason for its action. Specifically, Defendant explained that, at the time he was assigned to Plaintiff's case, Cotton was suing Defendant for discrimination, naming some of the same actors as those named in Plaintiff's case. (Reply (#49) Ex. 3 at 45–51). Defendant ultimately removed Cotton to avoid any potential conflict of interest between the two cases. Id.; see also (Opposition (#47) Ex. 8 at ¶ 3). Plaintiff failed to produce any evidence to show that this explanation was pretextual.

Accordingly, Defendant's Motion for Summary Judgment (#42) on Plaintiff's retaliation claim is granted.

### III. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#42) is granted.

DATED: This 13TH day of September, 2006.

_____
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff also provides no evidence to show a causal link between her protected activity and the transfer of her discrimination case.